**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LARAINE CONTE,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **SAM SHEAR,** *et al.*, <br><br> Defendants. | Civil Action No. 20-16458 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Compel Arbitration ("the Motion") filed by Defendants Sam Shear, Mike Winberg, and Premier Waterproofing, LLC. (collectively, "Defendants"). Defendants filed a brief in support of the Motion ("Moving Br.", ECF No. 20-5), along with a Certification of Counsel (ECF No. 20-2), a Certification of Defendant Winberg (ECF No. 20-3), and a Certification of Defendant Shear (ECF No. 20-4). Plaintiffs opposed the Motion, filing a brief in opposition, ("Opp'n Br.", ECF No. 23) a Certification of Plaintiff Conte (ECF No. 23-1), and a Certification of Plaintiff Guarino (ECF No. 23-2).

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' renewed Motion to Compel Arbitration will be DENIED.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

On October 13, 2020, Plaintiffs filed their Complaint in the Superior Court of New Jersey, Law Division, Mercer County. (ECF No. 1.) On November 18, 2020, Defendants removed the action to this Court. (See *id*.) On November 25, 2020, they filed a Motion to Compel Arbitration or in the alternative, Motion to Dismiss Count II of Plaintiffs' Complaint. (ECF No. 3.) On December 16, 2020, Plaintiffs filed their first Amended Complaint alleging breach of an oral contract, unjust enrichment, and accounting for converted property (Count I); consumer fraud from unconscionable business practices arising out of the work performed by Defendants (Count II); a CFA violation (Count III); and claims for legal fraud, consumer fraud, tortious asportation, and conversion of property, seeking compensatory and punitive damages against Defendants (Count IV). (ECF No. 6.)[1]

On June 24, 2021, the Court denied Defendant's prior Motion to Compel Arbitration without prejudice on the grounds that Plaintiffs had raised issues with respect to their notice of the arbitration clause and their execution of the alleged contract. (ECF No. 11 at 12–13). The parties were therefore ordered to conduct limited discovery on the issue of arbitrability. (ECF No. 12.)

Plaintiffs filed a Second Amended Complaint on September 7, 2021 (ECF No. 19) alleging breach of contract and unjust enrichment (Count I); consumer fraud based on an unregistered business performing work without a contract (Count II); a Consumer Fraud Act ("CFA") violation (Count III); claims for legal fraud, tortious asportation and conversion of property seeking compensatory and punitive damages (Count IV); and negligence (Count V).

---

[1] While the Amended Complaint was filed after Defendants' Motion to Dismiss, the allegations underlying Count II of Plaintiffs' Amended Complaint are nearly unchanged from their original Complaint. Plaintiffs provided a red-lined Amended Complaint indicating the changes made to their original Complaint. (*See* Red-Lined Complaint (ECF No. 6-1) ¶¶ 64–69.)

In early 2018, Plaintiff Laraine Conte and her husband, Mark Conte (collectively, "the Contes"), noticed water intrusion in a section of their basement. (Am. Compl. ¶ 3, ECF No. 19.) The water intrusion caused mold to grow in their basement. (*Id*.) To address this problem, the Contes contacted and solicited proposals from several contractors. (*Id*. ¶ 4.) On or about February 17, 2018, Defendant Winberg, a representative of Defendant Premier, appeared at the Contes' home to prepare an estimate. (Winberg Cert. ¶¶ 2–4, ECF No. 20-3.) Ultimately, Plaintiff selected Defendant Premier to perform the work needed in their basement. (Id. at ¶ 15.) Following the in-person meeting, Defendant Winberg emailed Plaintiffs a copy of a proposal for services ("the Proposal"). (*Id*. at ¶ 5). The Proposal attached to the February 17, 2018 email is dated February 16, 2018 and names only Plaintiff Conte as the customer. (Winberg Cert, Ex. W1.) The Proposal is signed by Defendants Shear and Winberg; the customer signature is left blank. (*Id*.)

Plaintiff Conte told Defendant Winberg that she was unable to sign the proposal because she could not afford the estimated price of $21,000. (Conte Cert. at Ex. A ¶ 14, ECF No. 23-1.) Plaintiff Conte requested a referral for financing. (Winberg Cert. ¶ 6.) Plaintiff Conte could not get approval for financing, so her sister, Plaintiff Guarino, applied for financing through GreenSky to pay for Defendant Premier's services. (*Id*. ¶ 9.) For GreenSky to approve Plaintiff Guarino for financing, she was required to be listed on the underlying proposal for services. (*Id*. ¶ 10.) Defendant Winberg revised the Proposal to include Plaintiff Guarino's name. (*Id*. ¶ 11.) The revised proposal included both Plaintiff Guarino and Conte. (*Id*. at Ex. W2.) Again, only Defendants Shear and Winberg's signatures appeared on this revised proposal. (*Id*.) On March 4, 2018, Defendant Winberg emailed Plaintiffs an outline of GreenSky's financing terms along with the updated proposal for services. (*Id*. at ¶ 13.) Later in the afternoon on March 4, Defendant Winberg exchanged text messages with Plaintiff Guarino. (*Id*. at ¶ 14.) The text message from

Plaintiff Guarino stated, "I read through your e-mail and now everything makes sense to me. Thank you for explaining it to me. I also thank you for getting that loan for me. There was a lot going on and to understand that day. I do truly appreciate it. Janet" (*Id*. at Ex. W5.)

On March 15, 2018, Defendant Premier completed its services and payment was authorized by Plaintiffs. (*Id*. at ¶ 16.) Defendant Winberg emailed Plaintiffs a copy of the proposal. (*Id*.) The proposal was marked "paid in full" and signed by only Defendants Shear and Winberg. (*Id*. at Ex. W6.)

## II.   LEGAL STANDARD

In determining whether a valid arbitration agreement exists, a court must decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint[.]" *Guidotti v. Legal Helpers Debt Resolution*, L.L.C. (*Guidotti I*), 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). However,

> [w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp.*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citing *Guidotti I,* 716 F.3d at 776). In such circumstances, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." *Ross v. CACH, LLC*, Civ No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015). Afterwards, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a [Rule 56] summary judgment standard." *Guidotti I*, 716 F.3d at 776. Under this standard, the Court must

determine whether a genuine issue of material fact remains regarding whether the parties agreed to arbitrate. *Id*. at 780.

When considering the motion to compel under the Rule 56 standard, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *SBRMCOA v. Bayside Resort Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) (quoting *Kaneff v. Delaware Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009) (internal quotation marks omitted)). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id*. (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir. 1980)).

### III. DISCUSSION

#### A. WHETHER DEFENDANTS' FAILURE TO ADDRESS "CHOICE OF LAW" DISQUALIFIES THEIR MOTION

Plaintiffs argue that Defendants' failure to address "choice of law" in their removal papers or in their motion should disqualify their motion from consideration. (Opp'n Br. at 16.) Plaintiffs assert that nowhere in Defendants' motion "is there a statement as to why the removed plaintiffs are not entitled to have their case decided pursuant to New Jersey statutory and common law." (*Id*. at 17.) Plaintiffs supply no authority to support the disqualification they seek. Defendants, in their reply, do not address this point.

Plaintiffs, fail to cite to any authority to support their argument that the Motion should be disqualified due to Defendants' failure to address choice of law in their removal papers or the Motion. Insofar as Plaintiffs provide no authority for "disqualification" of the Motion, and a

thorough review of caselaw by the Court has revealed no such authority exists, the Court will not disqualify the Motion on this ground.[2]

### B. WHETHER THE PARTIES HAVE AN AGREEMENT TO ARBITRATE

To determine whether parties agreed to arbitrate, courts turn to "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Insofar as arbitration is a matter of contract, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964), before compelling arbitration pursuant to the FAA, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Aufio Corp*, 401 F.3d 529, 532 (3d Cir. 2005). The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). The presumption in favor of arbitration, however, "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

To prove the existence of a valid contract, a party must show that: (1) there was a meeting of the minds; (2) there was an offer and acceptance; (3) there was consideration; and (4) there was certainty in the terms of the agreement. *Big M. Inc. v. Dryden Advisory Group*, Civ. No. 08-3567, 2009 WL 1905106, at *13 (D.N.J. June 30, 2009) (citing N.J. Jury Instr. Civ. 4.10 C). New Jersey requires the agreement to arbitrate be "the product of mutual assent, as determined under customary principles of contract law." *Kernahan v. Home Warranty Administrator of Florida, Inc.*, 236 N.J. 301, 319 (2019) (quoting *Atalese v. U.S. Legal Services Group, L.P.,* 219 N.J. 430,

---

[2] Given that the Court is sitting in diversity, it will apply New Jersey law to the parties' dispute. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

442 (2014)). Likewise, the Third Circuit has held that "[b]efore a party to a lawsuit can be ordered to arbitrate . . . there should be an *express, unequivocal* agreement to that effect." *Kirleis*, 560 F.3d at 161 (quoting *Par-Knit Mills*, 636 F.2d at 54 (alterations and emphasis in original)). If there is doubt whether such agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. *Par-Knit Mills*, 636 F.2d at 54.

At issue on the Motion before the Court, therefore, is whether a genuine issue of material fact remains as to whether the parties entered into a valid agreement to arbitrate. Plaintiffs assert that that no arbitration agreement was ever made. They attest that they never signed the Proposal. (Conte Cert. at Ex. A ¶ 8); (Guarino Cert. ¶¶ 15,16.) Plaintiff Conte additionally indicates that she " never discussed [the rules of arbitration] with anyone from Premier and would never agree to sign the proposal if [she] was told that it would cancel [her] right to file this lawsuit." (Conte Cert. ¶ 15.)

Defendants maintain that the parties have a valid, binding contract which contains an arbitration provision fully encompassing the claims at bar. (Moving Br. at 5.) They argue that while Plaintiffs never signed the Proposal, a contract was nevertheless formed by party conduct. (*Id*. at 7.) Defendants argue that Plaintiffs have always had possession of the Proposal as they attached the same to their first complaint filed in state court. (*Id*.) Defendants further contend Plaintiffs never objected to the Proposal. (*Id*.)

Plaintiffs attached the Proposal at issue to their Second Amended Complaint. (ECF No. 19, ECF No. 6-2 (Ex. B) at 51–52.) It is dated February 16, 2018, and indicates Defendants surveyed the Contes' home on February 16, 2018. (*Id*. at 8.) The "install" date or start date for the project is listed as February 28, 2018. (*Id*.) It indicates the time at which Defendants surveyed the Contes' home, the relative humidity of their basement, and the temperature of their basement.

(*Id*.) It also lists the cost of the project as $21,000.00. (*Id*.) Plaintiff Conte's name and email are included on the first page of the contract. (*Id*.) The address listed on the Proposal, referred throughout the Proposal as the "premises" for the project, is the one for the Contes' home. (*Id*.)

The arbitration clause at issue is on the second page of the Proposal, and provides, in pertinent part:

> Any disputes, controversies or claims between Owner / Signing Agent and Premier Waterproofing, LLC, including but not limited to all statutory claims and all claims that arise from, or relate[] to this contract, or the work to be performed by Premier Waterproofing shall be resolved by arbitration administered by the B.B.B. (Better Business Bureau) or legal consul in Bucks County, PA.

(*Id*. at 9.) Following this arbitration clause is a section entitled "Owner's Acceptance." (*Id*.) Underneath the heading "Owner's Acceptance" is a clause that states:

> The Owner(s) or Trustee upon signing this agreement represent(s) and warrants that they are the Owner(s) or Owners representative of the aforesaid premises and that they have read this agreement. The above prices, specifications, conditions and separate warranty are satisfactory and hereby accepted. You are authorized to do the work as specified.

(*Id*.) Two signature lines follow this clause: one for the "Customer's / Agent Authorization" and one for "Design Consultants for Premier Waterproofing LLC." (*Id*.) Defendants Shear and Winberg provided their signatures on the "Design Consultants for Premier Waterproofing LLC" line, and dated their signatures as being affixed on February 16, 2018. (*Id*.) However, there is no signature or date on the line for "Customer's / Agent Authorization." (*Id*.) That is, neither Plaintiff Conte nor Plaintiff Guarino signed the Proposal. (*Id*.)

Nevertheless, Defendants argue a valid agreement exists between Plaintiffs and Defendants because (1) the contract was formed pursuant to party conduct, and (2) "Plaintiffs have always had possession of the underlying contract as they attached the same to their first complaint filed in State Superior Court." (Moving Br. at 7.) In support, Defendants assert that on February 17, 2018,

Defendant Winberg sent Plaintiff Conte and Plaintiff Guarino an email following up on the meeting at Plaintiff Conte's home. (Winberg Cert., ECF No. 20-3 at 6 (Ex. W1).) The email contained a copy of the "proposed contract for services." (*Id*.) On February 22, 2018, Plaintiff Guarino executed the GreenSky loan application acknowledgment and a GreenSky borrower form. (*Id*. at 17–18.) On March 4, 2018, Defendant Winberg emailed Plaintiffs an outline of the GreenSky financing terms and a copy of an updated contract for services containing both Plaintiffs' names but neither of their signatures. (*Id*. at 20–23.) Also, on March 4, 2018, Defendant Winberg exchanged text messages with Plaintiff Guarino in which Plaintiff Guarino affirmed she "read through [the March 4, 2018] email and . . . everything [made] sense to [her]. Thank you for explaining it to me." (*Id*. at 26.) Lastly, after Defendants completed the work on the Contes' home, Defendant Winberg emailed Plaintiffs Laraine and Guarino another copy of the Proposal marked "paid in full," since Defendants received payment for their services. (*Id*. at 29–30.) This copy of the Proposal was also not signed by either Plaintiff Conte or Plaintiff Guarino. (*Id*. at 30.)

Plaintiffs consistently deny agreeing to an arbitration clause. (*See* Certification of Counsel at 9–12 (Ex. C2, Plaintiff Conte Response to Admissions)); (*Id*. at 13–17 (Ex. C1, Plaintiff Laraine Conte's Answers to Interrogatories)); (*Id*. at 19–22 (Ex. C4, Plaintiff Guarino Response to Admissions).) Defendant Winberg indicates in his Certification that he took the March 4, 2018 text message from Plaintiff Guarino "at face value which meant all the terms of the contract, as well as financing, were understood by the Plaintiffs." (Winberg Cert. ¶ 15.) Plaintiff Conte, however, in her certification, indicates that she had never discussed the issues of the arbitration clause with any of the Defendants and would have never agreed to sign the Proposal if she knew it would terminate her rights to file the instant lawsuit. (Conte Certification ¶¶ 14–15.) Further,

Plaintiff Conte in her first certification (attached as Ex. A to Conte Certification) indicates "at no time did [Defendant Winberg] reveal to [her] that on page 2 of the Proposal there was an 'Exclusions' clause," which included the arbitration clause. (*Id*. ¶¶ 10–11.) Additionally, Plaintiff Guarino indicates in her certification that she "never received any written or oral information from defendants regarding the terms of Proposal to improve, including but not limited to the fine-print arbitration provision." (Guarino Cert. ¶ 16.)

Generally speaking, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases,* 283 F.3d 595, 608 (3d Cir. 2002). The affiant must set forth specific facts that reveal a genuine issue of material fact. *Id*. A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).

Here, Defendants filed the instant Motion to Compel Arbitration and, based on a review of the record, the Court finds that Defendants have met their *prima facie* burden of establishing a contract by pointing to evidence that: (1) they provided the Proposal to Plaintiff Conte, (2) that Plaintiff Conte's text message arguably indicated her assent to Proposal's terms, and (3) the parties' ensuing conduct. As such, the burden shifts to Plaintiffs to show a genuine issue of material fact exists by presenting sufficient evidence that would permit a jury to return a verdict in their favor. *See Carpenter v. Proctor & Gamble Disability Benefit Plan & Benefit Plans Trust*, 229 Fed. App'x. 170, 171 (3d Cir. 2007)

The Court finds that Plaintiffs have succeeded in showing the existence of a genuine issue of material fact for the following reasons. First and foremost, it is undisputed that Plaintiffs never signed the Proposal. Second, both Plaintiffs' certifications detail specific circumstances that

rendered formation of an agreement to arbitrate impossible.  In her certification, Plaintiff Conte consistently states that she never discussed the terms of the agreement with Defendants and would have never agreed to the arbitration clause had she been aware of its consequences.  (*See* Conte Cert. ¶¶ 14–15, Ex. A.)  Plaintiff Guarino indicates she never received information concerning the terms of the Proposal and would not have agreed to it had she known it included a binding arbitration clause.  (Guarino Certification¶¶ 16–17.)  Based on this showing, the Court finds that Plaintiffs have raised a genuine issue of material fact with respect to whether the parties reached an agreement that included a requirement to arbitrate their disputes. *See Kirleis*, 560 F.3d at 161 (finding formation of agreement impossible where plaintiff detailed specific circumstances that she never agreed to arbitrate.)

Given that the Court has concluded that there is a genuine issue of material fact with respect to whether the parties agreed to arbitrate, it cannot grant the Motion to Compel Arbitration.  *Adkins v. Sogliuzzo*, Civ. No. 09-1123, 2010 WL 502980, at *3 (D.N.J. Feb. 9, 2010) (citing *Park-Knit Mills*, 636 F.2d at 54).  Therefore, the Motion will be denied.  In accordance with Section 4 of the Federal Arbitration Act, this matter will proceed to a summary trial.  *Id.* (citing 9 U.S.C. § 4).

## IV.     CONCLUSION

For the reasons stated above, the Court will DENY the Motion to Compel Arbitration and instruct the parties to meet and confer and submit a joint proposal as to how to they wish to proceed with respect to a summary trial on whether there was a valid arbitration agreement.

Date: **September 30, 2022**

                                              s/ Zahid N. Quraishi
                                              **ZAHID N. QURAISHI**
                                              **UNITED STATES DISTRICT JUDGE**